# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Derrick Jerome Spencer, | Case No. 18-cv-2639 (MJD/TNL) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| M. Rios, Warden, | |
| Respondent. | |

Derrick Jerome Spencer, 14779-041, Duluth Federal Prison Camp, P.O. Box 1000, Duluth, MN 55814 (*pro se* Petitioner); and

Ana Voss, Ann M. Bildtsen, and Erin M. Secord, Assistant United States Attorneys, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis MN 55415 (for Respondent).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, (ECF No. 1), Petitioner's Motion for Entry of Default Judgment (ECF No. 7), Petitioner's Motion to Reconsider Motion for Default Judgment (ECF No. 11), and Respondent's Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Amendment to Petition, and Motion to Reconsider Motion for Default Judgment (ECF No. 17). This action has been referred to the undersigned magistrate judge for report and recommendation to the Honorable Michael J. Davis, United States District Judge for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.2(b). Based on all the files, records, and proceedings

herein, and for the reasons set forth below, this Court recommends that the petition and related motions be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Derrick Jerome Spencer is incarcerated at the Federal Prison Camp in Duluth, Minnesota. Pet., at 1 (ECF No. 1). Spencer is serving a 262-month term of imprisonment for multiple drug-related offenses. Deloia Decl. ¶ 7, Ex. B. (ECF Nos. 18 & 18-2). He has a projected release date of November 8, 2026. *Id.*

Prison officials charged Spencer with two violations of prison rules and regulations on October 27, 2017. They first charged Spencer with possessing a hazardous tool. They alleged that on the afternoon of October 27, Officer J. Ostrander entered a bathroom to conduct a search of Spencer and several other inmates. (ECF No. 3-1, p. 2). When Officer Ostrander patted down Spencer, he noticed a hard object near the inside of his right ankle. (ECF No. 3-1, p. 2). The officer directed Spencer to lift up the leg of his sweatpants. (ECF No. 3-1, p. 2). Spencer did, and the officer noticed a cell phone tucked in Spencer's sock. (ECF No. 3-1, p. 2). When the officer attempted to remove the phone, Spencer jumped away from him and refused to comply with the officer's commands to pull his sock down and remove the phone. (ECF No. 3-1, p. 2). This incident was documented in report number 3049678. In response, Spencer stated that Officer Ostrander falsified the incident report. (ECF No. 3-1, p. 2).

Second, prison authorities charged Spencer with disposing of an item during a search. They alleged that when Spencer jumped away from Officer Ostrander, the officer radioed for assistance to Officer Rajala who was outside the bathroom. (ECF No. 3-1, p.

2

1). When Officer Rajala entered the bathroom, Spencer removed the phone from his sock and threw it in the garbage can, in view of both officers. (ECF No. 3-1, p. 1). Officer Ostrander recovered the phone from the trash can. (ECF No. 3-1, p. 1). Officer Ostrander documented this incident in report number 3049682. In response to this report, Spencer denied possessing a cell phone or throwing it the garbage can. (ECF No. 3-1, p. 1).

Both incident reports were referred to Discipline Hearing Officer ("DHO") Mark Deloia for a hearing on November 21, 2017. For both incidents, Spencer indicated that he wished to call Officer Rajala to testify and that he wished to have a staff member represent him at his hearing. (ECF Nos. 18-6, 18-12). Before the hearing, however, staff informed Spencer that his representative would not be present at the prison camp that day. Deloia Decl. ¶¶ 13, 24. The DHO indicates that Spencer chose to waive his right to representation and proceed with the hearing. *Id*. Spencer contends prison officials pressured him into waiving his right to a staff representative, telling him his representative would not be available for at least two months and that he would be kept in solitary confinement during this time.

Officer Rajala also did not testify at the hearing. (ECF No. 18-9, p. 1, 18-15, p. 1). Instead, he provided a written statement indicating that as he entered the bathroom, he observed Spencer throw a cell phone in the garbage. (ECF No. 3-1, p. 9). The DHO determined that in light of this memorandum, Officer Rajala's testimony would be redundant and there was no need for him to appear. (ECF No. 18-9, p. 1, 18-15, p. 1).

The DHO determined, based on "the greater weight of the evidence," that Spencer committed the prohibited acts of possession of a hazardous tool and disposing of an item

3

during a search. (ECF Nos. 18-9, p. 3, 18-15, p. 3). In reaching this conclusion, the DHO placed great weight on the fact that two officers observed the cell phone and that those staff members had "nothing to gain from fabrication of the charge." (ECF Nos. 18-9, p. 3, 18-15, p. 3). The DHO decided that Spencer would lose 41 days of good conduct time for each violation. (ECF Nos. 18-9, p. 3, 18-15, p. 3).

Spencer appealed both decisions to the North Central Regional Office. (ECF No. 3-1, pp. 10, 16). Both appeals were denied. (ECF No. 3-1, pp. 12, 18). Spencer then submitted the appeals to the Central Administrative Office. (ECF No. 3-1, pp. 13, 19). Again, both appeals were denied. (ECF No. 3-1, p. 15, 21).

Spencer then filed this habeas corpus petition, seeking relief on four grounds. First, he argued that the DHO's findings regarding both incidents are inconsistent with the evidence presented in the DHO report. Second, he claimed that the incident reports were insufficient to support the DHO's findings. Third, he argued that he was forced to waive his right to a staff representative. Finally, he claimed that the DHO violated his due process rights by preventing him from calling witnesses. Spencer asks that the incident reports be expunged and that the Court order his good time credit be restored.

On October 1, 2018, the Court ordered Respondent to file an answer to the petition within 30 days. (ECF No. 5). Sometime thereafter, the Court learned that, due to an inadvertent clerical error, Respondent did not receive a copy of the petition or the October 1, 2018 order. (ECF No. 6). As a result, the Court struck the previous deadlines from its October 1, 2018 order and ordered Respondents to answer the petition on or before December 15, 2019. (ECF No. 6). On November 16, 2018, Spencer filed a motion for

default judgment. (ECF No. 7).[1] Approximately one month later, he filed both a motion to reconsider his motion for default judgment and an amendment to his petition, alleging that amended DHO reports that he received were invalid because they were signed by a different BOP employee. (ECF Nos. 10 and 11). In response, Respondent asked that his deadline to answer the petition be extended to December 19, 2018, so that he could address Spencer's amendment. (ECF No. 14). The Court granted that request and Respondent subsequently answered the petition.

## II. ANALYSIS

Spencer has filed both a motion for default judgment and a motion to reconsider his motion for default judgment. Because either motion could be dispositive to the issues raised in the Petition, the Court will consider those motions first.

Default judgment may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Though the Federal Rules of Civil Procedure may be applied in habeas proceedings when they would not be inconsistent with any statutory provisions or the Rules Governing Section 2254 Cases,[2] default judgments are strongly disfavored in such proceedings. *Hale v. Lockhart*, 903 F.2d 545, 547 (8th Cir. 1990). This is particularly true when the petitioner seeks default judgment only because the opposing party is untimely in responding. "[N]o

---

[1] Spencer's motion was dated November 14, 2018 and was likely mailed before the Court extended the deadline for Respondent to answer the petition.
[2] The Rules Governing Section 2254 Cases apply equally to petitions brought under Section 2241, like the case here. Rule 1(b), Rules Governing Section 2254. *See also Bowers v. U.S. Parole, Comm'n, Warden*, 760 F.3d 1177, 1183 n. 8 (11th Cir. 2014).

5

court has ordered a habeas writ to issue solely because of delay." *Hale v. Lockhart*, 903 F.2d 545, 547 (8th Cir. 1990); *see also Ward v. Terrell*, No. 08-cv-837, 2008 WL 5273720 *7 n. 4 (D. Minn. Dec. 17, 2008) (collecting cases that hold failure to file timely response does not entitle Petitioner to a writ). The Court therefore recommends that Spencer's motion for default judgment and reconsideration of his motion for default judgment be denied, and that the petition be considered on the merits.

Moreover, even assuming it appropriate to enter default judgments in habeas corpus proceedings, nothing in the record shows that Respondent failed to comply with the deadlines ordered by the Court. Though Respondent did not timely respond to the petition as required by the Court's October 1, 2018 Order (ECF No. 5), his failure to do so was excusable, given the inadvertent error that delayed his receipt of the petition and the Court's October 1 order. Once Respondent received the petition, he complied with the Court-ordered deadline for his response. As a result, default judgment is not appropriate here. The Court therefore turns to the merits of the petition.

The basic purpose of habeas corpus is to allow a prisoner to attack the legality of his detention. *Preiser v. Rodriquez*, 411 U.S. 475, 484 (1973). "A motion under 28 U.S.C. § 2241 challenges the *execution* of a sentence while a motion under 28 U.S.C. § 2255 challenges the *imposition* of a sentence." *Deleston v. Wilson*, Case No. 13-cv-2733, 2014 WL 3384680 *3 (D. Minn. July 10, 2014) (emphasis in original); *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002). A writ of habeas corpus is the appropriate vehicle for challenging the loss of good time. *See Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014) (explaining that where petitioner seeks remedy that would result in an earlier release from

6

prison, habeas corpus is the proper remedy). *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996). Jurisdiction of this petition is therefore is proper under 28 U.S.C. § 2241.

Petitioner first contends that the DHO's findings are inconsistent with the evidence described in the DHO report. He argues that he could not have disposed of the cell phone in the manner detailed in the report because the cell phone was still intact when corrections officers located it. Petitioner further argues that, had he disposed of the cell phone in the manner described in the report, "there would be no evidence of a cell phone." He also notes that a photo of the cell phone shows that it is completely intact. Petitioner does not identify the constitutional provision, treaty, or law of the United States under which he brings this claim. *See* 28 U.S.C. § 2241(c)(3). It appears, however, that Petitioner is challenging the weight and credibility of the evidence used to find that he violated prison regulations. The Court will construe his claim as such.

A prisoner facing loss of good-time credit is not entitled to the full array of constitutional rights that he or she had at trial. *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974). But procedural due process requires that the findings of the prison disciplinary board be supported by "some evidence" in the record. *Superintendent v. Hill,* 472 U.S. 445, 454 (1985). This standard does not "require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id*. at 455 Instead, it requires the Court to assess only "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56. So long as there is "some basis in fact," the decision of the prison administrator must stand. *Id*. at 456.

7

The discrepancies that Spencer identifies in the evidence do not justify habeas relief. The DHO considered Officer Ostrander's incident report and Officer Rajala's memorandum. Officer Ostrander felt a hard object on Spencer and noticed a cell phone tucked in his sock. Both officers indicated that they observed Spencer discard a cell phone in the trash can. There is sufficient evidence to uphold the findings of the prison administrators.

In addition, Spencer's claim that the evidence is inconsistent is outside the scope of review in this habeas petition. The Court may not reweigh the evidence or offer its own independent assessment of the officers' credibility in assessing whether some evidence supports the DHO's decision. *Superintendent*, 472 U.S. at 454. Thus, Spencer's argument that the evidence is inconsistent must fail.

Moreover, the Court's recommendation would not change even if it were to consider the merits of Spencer's argument. Spencer appears to presume that there is no possible way in which he could discard the phone without it breaking into multiple pieces. But neither officer testified that Spencer discarded the phone with substantial force, or that he otherwise threw it in the trash can in such a manner as to break it. In short, there is ample reason in the record for the DHO to conclude the phone would be intact even if discarded. The Court therefore recommends that Petitioner's first claim for relief be denied.

Spencer next argues that the evidence is insufficient to support the DHO's findings because nothing in the incident report indicates that Officers Ostrander or Rajala observed Spencer discarding the cell phone in the trash can. He further contends that though Officer Rajala later wrote a memorandum stating as much, that memorandum was not part of the

8

initial incident reports presented to the DHO. As before, the same "some evidence" standard set forth by *Superintendent* applies to Petitioner's claim. 472 U.S. at 455.

Again, Spencer's claim is without merit. Incident report number 3049682 indicates that Officer Ostrander observed Spencer discard the phone into the trash can as Officer Rajala entered the bathroom. (ECF No. 3-1, p. 1). This report was presented to, and considered by, the DHO. In reality, it appears that Spencer is challenging the weight and credibility of Officer Ostrander's statements. The Court does not have the authority to examine the credibility of witness statements in a proceeding conducted by prison disciplinary authorities. *Id.* The Court therefore recommends that Spencer's second claim for relief be denied.

Spencer also contends that prison staff coerced him into waiving his right to have a staff representative at his DHO hearing. He contends that a prison unit manager informed him that because his staff representative was not available, Spencer could either represent himself or spend an additional two months in solitary confinement. Again, Spencer does not identify the constitutional provision, treaty, or law of the United States that he claims was violated by the coercion. As before, the Court presumes that Spencer is claiming his right to procedural due process was violated.[3]

Prisoners facing the loss of good time are entitled to the following procedural requirements: (1) advanced written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and

---

[3] The DHO report indicates that Spencer waived his right to a staff representative. The Court will assume without deciding for purposes of this decision that Spencer's waiver was not voluntary because he was told the hearing would be delayed and that he would be required to serve additional time in solitary confinement.

9

present documentary evidence in his or her defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Espinoza v. Peterson,* 283 F.3d 949, 952 (8th Cir. 2002). A prisoner does not, however, have a constitutional right to a staff representative at a disciplinary proceeding. *Tewell v. Outlaw,* No. 08-cv-136, 2008 WL 4216423 *4 (E.D. Ark. Sept. 12, 2008) (citing *Hudson v. Hedgepath,* 92 F.3d 748, 751 (8th Cir. 1996)); *see also Lourido-Vidal v. Fisher*, 12-cv-499, 2013 WL 3771223 *6 (D. Minn. July 17, 2013). Such a right exists only when the inmate is illiterate or where "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570. Here, Spencer does not claim to be illiterate; nor does he contend that his case is so complex that he requires the appointment of a staff representative. In reality, his claims are quite straightforward. Therefore, his due process claim must fail.

BOP regulations also provide that a prisoner is "entitled" to a staff representative if one is requested. 28 C.F.R. § 541.8(d)(1). If the staff representative cannot appear, the prisoner may be request that the hearing be postponed for "a reasonable amount of time," select another staff representative, or proceed unrepresented. 28 C.F.R. § 541.8(d)(3). In this case, Spencer appears to contend that the additional time he would need to wait for his staff representative would be unreasonable, particularly given that he would be required to spend that time in solitary confinement. The Court has not been able to identify any authority establishing what constitutes a reasonable amount of time under the BOP regulations.

10

Prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates[.]" *Sandin v. Conner,* 515 U.S. 472, 481-82 (1995). But the "principles of due process require an agency to follow its own regulations which have the force of law." *Marshall v. Lansing*, 839 F.2d 933, 943 (3d Cir. 1988). "[A] prisoner has a right to [ensure] that he is being held in compliance with agency regulations[.]" *Id.* "This is especially true with respect to regulations adopted for the benefit of particular individuals." *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1420 (M.D. Penn. 1994). The requirement that an agency be barred from taking action inconsistent with its internal regulations when doing so would affect individuals rights has been referred to by some courts as the *Accardi* doctrine. *See United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001).

The "appropriate course of action when a violation of an agency regulation occurs" is unclear. *Von Kahl*, 855 F. Supp. at 1420. In general, however, the fact that an agency failed to comply in all respects with its own regulations, even those designed for the protection of certain individuals, does not automatically justify habeas relief or remand for additional proceedings. *Id*. at 1421. Instead, the Court "must balance the relevant interests at stake in the context of the rights at issue and the proceedings under consideration." *Id*. Thus, in the prison disciplinary context, even when a regulation is clearly designed to protect an inmate's due process right, relief is warranted only when the inmate shows prejudice to his rights. *Id*. *see also Adams v. Fed. Bureau of Prisons*, No. 11-cv-2862, 2011 WL 7293381 \*2 (D. Minn. Dec. 6, 2011) ("On a repeated and consistent basis, federal

11

courts [have held] that in prison disciplinary cases, '[e]ven if a prison official's actions create a potential due process violation, a habeas petitioner needs to demonstrate that he was harmed by the violation in order to obtain relief.'") (quoting *Jordan v. Zych*, 10-cv-491, 2011 WL 2447937 *4 (W.D. Va. June 15, 2011)), *report and recommendation adopted by* 2012 WL 503798 (D. Minn. Feb. 14, 2012) This approach encourages "officials to enact and comply with regulatory guidelines for the exercise of their discretion and, on the other hand, forgiv[es] harmless or relatively insignificant noncompliance." *Von Kahl*, 855 F. Supp. at 1421.

In this case, the requirement that an inmate be allowed the option to be represented by a staff represented in a disciplinary hearing is clearly intended to protect and assist prisoners. This does not necessarily implicate the inmate's due process rights. In fact, as discussed above, the United States Supreme Court has declined to impose a right to counsel or counsel substitute in a disciplinary proceeding. *See Wolff*, 418 U.S. at 570. Typically, a "review of an inmate's disciplinary proceeding is 'limited to whether the three steps mandated by *Wolff* were followed and whether there was some evidence to support the disciplinary committee's findings.'" *Farrakhan-Muhammad v. Oliver*, No. 15-cv-2222, 2016 WL 8928568 *6 (D. Colo. Oct. 20, 2016) (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996)), *aff'd*, 677 F. App'x 478 (10th Cir. 2017). As a result, given the context of the proceedings, Petitioner's right to representation by a staff member, as guaranteed by prison regulations, is not so substantial as to automatically warrant relief if that right is violated.

The Court therefore considers whether Petitioner has suffered prejudice from BOP staff's failure to provide him a staff representative. The Court concludes that he has not. Spencer has not established with any specificity how he would have been better able to contest his charges, disprove his charges, or present other testimonial or documentary evidence to establish that he violated prison rules. Again, there is nothing terribly complex about the allegations against Spencer, nor regarding his potential defenses. Given these circumstances, the Court concludes that any error in failing to provide Spencer a staff representative was harmless. The Court therefore recommends that Spencer's third ground for relief be denied.

Spencer next argues that Respondent violated his due process rights by not allowing him to question witnesses and present evidence at his hearing. The DHO reports indicate that Spencer was permitted to make a statement at the hearing. (ECF Nos. 18-9, p. 1, 18-15, p. 1). Spencer does not identify any specific evidence he wished to present, other than the testimony of Officer Rajala. (ECF Nos. 18-6, 18-12). Thus, the Court construes his challenge to be related only to the testimony of Officer Rajala.

The Due Process Clause requires prisoners to have the opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his or her defense. *Espinoza,* 283 F.3d at 953. Prison officials, however, have considerable discretion to refuse an inmate's request to call witnesses, "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Graham v. Baughman*, 772 F.2d 441, 444 (8th Cir. 1985) (quoting *Wolff*, 418 U.S. at 566). But this discretion is not limitless. *Id*. Because "the right to call witnesses is basic to a fair hearing[,]"

13

there must be a legitimate reason for denying the prisoner this opportunity." *Id*. Officials "must [also] at some point explain their reasons for refusing to grant such a request." *Id*. The burden of proving adequate justification lies with the prison officials. *Id*.

Here, prison officials denied Spencer the opportunity to call Officer Rajala as a witness because the officer provided a statement explaining that he saw Spencer throw a cell phone in the trash. Respondent contends that the officer's testimony was therefore unnecessary because it would merely be duplicative of the written statement. Respondent does not claim that there were any security-related reasons that would have prevented the officer from testifying.

The Court is troubled by Respondent's explanation. This case was essentially a "swearing contest" between two prison officers and Spencer. *See id*. at 445. It has been well-documented that inmates face "a severe credibility problem when trying to disprove the charges of a prison guard." *Id*. (quoting *Hayes v. Walker*, 555 F.2d 625, 630 (7th Cir. 1977)). Indeed, this was the case here, as the DHO reached his decision based largely on the fact that he believed that neither officer had reason to lie. Thus, the opportunity for the factfinder to assess the credibility of Officer Rajala through live testimony could have been beneficial to Spencer in proving his case.

Nonetheless, though the justification Respondent offers is marginal, it is sufficient to satisfy the limited procedural due process protections afforded to inmates in prison disciplinary hearings. Prison officials did contact and obtain the statement of Officer Rajala, thereby informing Spencer of the specific allegations to be considered as part of the record in this matter. This is sufficient to satisfy Spencer's right to due process. *See id*. at

14

446 (holding that taking the statement of a witness, even if not through live testimony at the disciplinary hearing, can be sufficient to satisfy inmate's due process rights). Accordingly, given the broad discretion afforded to prison officials to determine whether witnesses should be called, the Court concludes that Spencer's due process rights were not violated.

Furthermore, even if prison officials erred in denying Spencer the right to call a witness, Spencer would still be required to show that the error affected the outcome of his disciplinary proceeding. *See Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (holding that "errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review"); *see also Adams v. Federal Bureau of Prisons*, No. 11-cv-2862, 2011 WL 7293381 *2 (D. Minn. Dec. 6, 2011) ("On a repeated and consistent basis, federal courts hold that in prison disciplinary cases, even if a prison official's actions create a potential due process violation, a habeas petitioner needs to demonstrate that he was harmed by the violation in order to obtain relief.") (citation and internal quotation marks omitted). Spencer cannot show prejudice for two reasons. First, Spencer would have no right to challenge the officer's credibility by confronting and cross-examining him. *See Wolff*, 418 U.S. at 567 (noting that confrontation and cross-examination would raise "considerable potential for havoc inside the prison walls"). As a result, it is unlikely that Officer Rajala's testimony would have been any different than the written statement that he provided and which prison officials considered in the disciplinary process. Second, and perhaps most importantly, Spencer does not explain how Officer Rajala's testimony would have altered the outcome of this proceeding because there was a

statement from a second person, Officer Ostrander, who witnessed Spencer with the phone, who also saw him toss it in the trash can, and who the DHO found had no reason to lie. As a result, even if Spencer challenged Officer Rajala's testimony to the point that he was no longer a credible witness, the DHO still would have the independent report of a second officer who was an eyewitness to both incidents. That officer would have been more than sufficient to support the DHO's decision. *Cf. Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[I]t is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar."). Tellingly, Spencer did not seek to call Officer Ostrander at his disciplinary hearing. Nor did he explain in his petition why Officer Ostrander's testimony would have been insufficient to uphold the DHO's findings. For this reason as well, the Court recommends that Spencer's fourth ground for relief be denied.

Spencer next challenges the veracity of his disciplinary reports in a December 2018 amendment to his petition. (ECF No. 10). In his amendment, he includes four exhibits: the two original disciplinary reports that he received following his hearing (ECF No. 10-1, pp. 1-6) and two amended disciplinary reports (ECF No. 10-1, pp. 7-12). The BOP issued amended reports because the original reports contained the wrong inmate registration number. Deloia Decl. ¶ 30. The original hearing reports were signed by Deloia on December 13, 2017 and delivered to Spencer by BOP employee K. Winger on December 18, 2017. (ECF No. 10-1, p. 3, 6). The amended reports were signed by Deloia on March 23, 2018. (ECF No. 10-1, p. 9, 12). The BOP's North Central Regional Office delivered those reports to Spencer on March 28 and March 30, 2018, when it rendered its decision

regarding Spencer's appeal. (ECF No. 3-1, p. 12, 18). BOP employee C. Hachey also delivered the reports to Spencer on December 7, 2018 (ECF No. 10-1, p. 9, 12). Spencer contends the "signature of C. Hachey has now made the signature and document signed by K. Winger null and void." (ECF No. 10, p. 3).

The BOP's correction of Spencer's inmate registration number and issuance of amended reports does not entitle him to relief. Nor does the fact that a different BOP employee delivered the amended reports to Spencer render relief appropriate. The DHO reviewed and signed amended reports and the amended reports contained no substantive changes. The new signature says nothing about the authenticity of the original reports; it reflects only the fact that a different BOP employee delivered the reports to Spencer. Nothing in the record indicates that Spencer was unable to appeal the disciplinary hearing officer's decision or otherwise take advantage of the administrative remedies process because the wrong inmate registration number was at the top of the form. *Cf. Thorton v. Daniels*, 554 Fed. App'x 762, 766-67 (10th Cir. 2014) (noting that inmate is not required to exhaust administrative remedies if doing so would be futile). The Court therefore recommends that this claim for relief fail.

Spencer also argues in his reply memorandum that it was "duplicitous" to charge him with two different incident reports for one act. Typically, habeas petitioners may not raise new arguments or claims for relief in their reply memoranda. *See Udoh v. Dooley*, No. 16-cv-4174, 2017 WL 2881126 *1 n. 1 (D. Minn. July 6, 2017) (noting that petitioner is barred from raising argument not raised in petition). But even if it were permissible for Spencer to raise this argument, he has not explained what legal authority entitles him to

17

seeks relief. In criminal sentencing proceedings, a court may group closely related counts together. U.S.S.G. § 3D1.2. Counts are closely related if they involve the same act or transaction. *Id*. But the sentencing guidelines do not apply to disciplinary proceedings. *See* U.S.S.G. § 1A1 (noting that guidelines establish sentencing policies). Nothing in BOP regulations requires the grouping of related offenses. *See generally* 28 C.F.R. § 541.1 *et seq*. And in any event, the Court notes that the incident reports relate to two discrete acts – the possession of a hazardous item and the disposal of an item during a search. Thus, the Court also recommends that this claim for relief be denied.[4]

In addition, Spencer argues in his reply brief that the other prisoners in the bathroom at the time of the search should have also been charged with possession of the cell phone. Again, Spencer's argument goes to whether there is "some evidence" in the record to support the DHO's findings that Spencer, and Spencer alone, had possession of the cell phone. *See Superintendent*, 472 U.S. at 454-55. For the same reasons above, this argument is without merit. There is sufficient evidence in the record, including the incident report and memorandum of Officer Rejala to establish that Spencer was the only person who had the cell phone and that he was responsible for discarding it. The Court therefore recommends that his claim for relief fail.

Finally, this Court recommends that no evidentiary hearing be held. The dispute can be resolved on the basis of the record and legal arguments submitted by the parties. *Wallace v. Lockhart*, 701 F.2d 719, 729–30 (8th Cir. 1983).

---

[4] Likewise, the fact that the DHO had only one hearing to address both charges does not entitle Spencer to relief. Prison authorities are well within their discretion to decide the most effective and efficient manner to hold such hearings.

### III.   RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Motion for Entry of Default Judgment (ECF No. 7) be **DENIED**.

2. Petitioner's Motion to Reconsider Motion for Default Judgment (ECF No. 11) be **DENIED**.

3. The Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, (ECF No. 1), be **DENIED** and **DISMISSED WITH PREJUDICE**.

Date:  April 23, 2019                               *s/ Tony N. Leung*
                                                    Tony N. Leung
                                                    United States Magistrate Judge
                                                    District of Minnesota

                                                    *Spencer v. M. Rios, Warden*
                                                    Case No. 18-cv-2639 (MJD/TNL)

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).